1IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| XINYI LIU | * | |
| 21 West End Ave., Apt 1110 | | |
| New York, NY 10023 | * | |
| | | |
| Plaintiff | * | |
| | | |
| v. | * | Civil Case No.: |
| | | |
| WATER SONG FOOD AND | * | |
| BEVERAGE, LLC, | | |
| 9253 Pigeonwing Pl | * | |
| Columbia, Maryland 21045 | | |
| | * | |
| **SERVE ON**: | | |
| Andrew Hinton | * | |
| 9253 Pigeonwing Pl | | |
| Columbia, MD 21045 | * | |
| | | |
| CHENG LIANG, | * | **JURY DEMAND** |
| 1800 Westphal Pl | | |
| Baltimore, MD 21230 | * | |
| | | |
| and | * | |
| | | |
| ANDREW HINTON | * | |
| 9253 Pigeonwing Pl | | |
| Columbia, MD 21045 | * | |
| | | |
| Defendants | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## COMPLAINT AND JURY DEMAND

Plaintiff Xinyi Liu hereby files this Complaint against Defendants Water Song Food and

Beverage, LLC ("WSFB"), Cheng Liang, and Andrew Hinton, and demand a Jury on all issues

triable by one:

### PARTIES

1.     Plaintiff Xinyi Liu is a resident of New York.

2.     Defendant WSFB is a Maryland company with a principal address of 9253 Pigeonwing Pl, Columbia, MD 21045. A copy of WSFB's Articles of Organization is attached hereto as <u>Ex. 1</u>. Upon information and belief, as of August 2025, WSFB owns and operates (i) Water Song Yunnan Kitchen ("Yunnan Kitchen"), located at 21 E Cross Street, Baltimore, MD 21230, (ii) WS Chicken Lab Towson, LLC, ("Chicken Lab") located at 3 W Chesapeake Avenue, Towson, MD 21204, and (iii) a food distribution service.

3.     Defendant Cheng "Colin" Liang is a resident of Maryland. Upon information and belief, Mr. Liang is WSFB's co-founder, owner, Chief Executive Officer ("CEO"), primary operator, agent, and *de facto* majority shareholder, and resides at 1800 Westphal Pl, Baltimore, MD 21230.

4.     Defendant Andrew Hinton is a resident of Maryland. Upon information and belief, Mr. Hinton is WSFB's co-founder, Managing Member, agent, and shareholder, and resides at 9253 Pigeonwing Pl, Columbia, MD 21045.

## JURISDICTION AND VENUE

5.     This Court maintains subject matter jurisdiction over this action per 28 U.S.C. § 1332 (diversity). Further, subject matter jurisdiction is invoked under 28 U.S.C. § 1331, as Plaintiff's claims involve 15 U.S.C §§ 77l and 78j.

6.     This Court has supplemental jurisdiction over Plaintiff's common law claims per 28 U.S.C. § 1367.

7.     This Court has personal jurisdiction over Defendants because (i) WSFB maintains its principal office in Maryland and otherwise WSFB and its members by contract consented to the jurisdiction and venue, and (ii) Messrs. Liang and Hinton are residents of Maryland.

8.     Venue in this District is proper per 28 U.S.C. § 1391(b).

**FACTS**

**A. General Background**

9.     On or around November 12, 2023, Ms. Liu visited Yunnan Kitchen. During her visit, she met Mr. Liang. Before her visit, Mr. Liang was introduced to Ms. Liu through her cousin.

10.    Mr. Liang introduced himself as the owner of Yunnan Kitchen as well as the CEO, primary operator, and majority shareholder of its parent company, WSFB.

11.    Mr. Liang further stated that WSFB owns and operates two restaurants: (i) Yunnan Kitchen and (ii) Water Song Street Food ("Street Food"), located at 3 W Chesapeake Avenue, Towson, MD 21204. He also stated that WSFB owns a food distribution service.

12.    During Ms. Liu's visit, Mr. Liang approached Ms. Liu with what he described as a legitimate opportunity to invest in WSFB's expanding business operations. He stated that he was looking for multiple individuals to purchase WSFB's security.

13.    On December 6, 2023, Mr. Liang informed Ms. Liu that he was seeking a $50,000 investment for a 4% equity stake in WSFB. He represented that investors would receive a 16% annual return and 4% preferred return. A copy of Ms. Liu's text exchange with Mr. Liang, originally in Mandarin and translated to English, discussing, among other things, his representations regarding 16% annual return is attached hereto as Ex. 2. *See id*. p. 1.

14.    That same day, Mr. Liang sent Ms. Liu WSFB's pitch deck (the "Investor Deck"). A copy of the Investor Deck is attached hereto as Ex. 3.

15.    Per the Investor Deck, WSFB sought to raise $350,000 in exchange for a 28% equity interest. *See id*., p. 23.

16.    Ms. Liu and Mr. Liang scheduled a virtual meeting via Zoom for December 9, 2023, to discuss the investment opportunity. *See* Ex. 2, pp. 2-3.

17.     During the virtual meeting on December 9, 2023, Mr. Liang presented the Investor Deck and shared a copy of WSFB's Operating Agreement (the "Agreement").

18.     While walking through the Investor Deck, Mr. Liang represented that WSFB was operating Yunnan Kitchen, Street Food, a food distribution service, and an e-commerce platform.[1] *See* Ex. 3, pp. 11-16.

19.     Mr. Liang further represented that WSFB's operations were profitable and will continue to be successful in the future. Specifically, he stated that WSFB's operations generated $1.5 million in revenue for 2023, projected $2.45 million in revenue for 2024, and would continue to be highly profitable. *See id*., p. 21 (Financial projections for 2024 to 2028).

20.     Mr. Liang confirmed that WSFB will expand to Washington, D.C. ("DC") and Philadelphia, PA, in addition to operating its restaurants in Baltimore, MD, Towson, MD, and that dividends will be paid to investors every six months. *See id*., pp. 18-23.

21.     Mr. Liang stated that WSFB was raising funds for a new restaurant location in DC that would open in April 2024, and for an expansion to Philadelphia expected in December 2024 or early 2025. He asserted that WSFB had already secured a lease for the DC location.

22.     On December 12, 2023, Mr. Liang informed Ms. Liu that Mr. Hinton had sent over a copy of the Agreement for execution. *See* Ex. 2, p. 4.

23.     Upon reviewing the Agreement, Ms. Liu noticed that Mr. Liang's name did not appear on it. On December 14, 2023, Ms. Liu questioned Mr. Liang about this omission. Mr. Liang responded that he was not listed as a majority shareholder because he was applying for an H-1B work visa. He explained that his mother, Kun Chen, was WSFB's majority shareholder at the time. *See id*., pp. 5-6. He assured Ms. Liu that this was not an issue of concern.

---

[1] Notably, as of December 9, 2023, Street Food was not in operation and therefore could not have been an active, successful business. *See infra*, ¶¶ 60-61, 79-80.

24.     Relying on Mr. Liang's representations, including, but not limited to, a guaranteed 16% annual return, a 4% preferred return, semi-annual dividend payments, WSFB's purported successful operations, its sound financial standing, and its pending expansions outside Maryland for further profit, Ms. Liu agreed to invest $50,000 in WSFB in exchange for a 4% equity stake.

25.     Mr. Liang made such representations as WSFB's owner, CEO, primary operator, agent, and *de facto* majority shareholder. *See* Ex. 3, p. 6. Other than his verbal statements and representations made in conjunction with the Investor Deck, Mr. Liang provided no further disclosure to Ms. Liu about WSFB.

26.     Despite its requirement to do so, WSFB failed to file a registration statement or a Form D with the Securities and Exchange Commission (SEC) that would have disclosed pertinent information to potential buyers of WSFB's security. A copy of the SEC Electronic Data Gathering, Analysis and Retrieval (EDGAR) system search results for WSFB, which gave a null result, is attached hereto as Ex. 4. *See id*.

27.     As a result, Ms. Liu did not have access to any public information regarding WSFB's financial condition or the risks associated with its security.

28.     On December 14, 2023, Ms. Liu signed the Agreement and became a member of WSFB. A copy of the executed Agreement is attached hereto as Ex. 5.

29.     On December 15, 2023, Ms. Liu wired $25,000 to WSFB's bank account and wired the remaining $25,000 on December 18 to complete the $50,000 investment. *See* Ex. 2, pp. 7-10.

**B.  WSFB's questionable business practices and failure to provide financial disclosure**

30.     Despite repeated requests, WSFB failed to issue Ms. Liu a Schedule K-1 for 2023 ("2023 K-1"), which would have reported her share of WSFB's gains, losses, deductions, credits,

and other distributions for the tax year ending on December 31, 2023. Each time Ms. Liu made a request, Mr. Liang falsely claimed that the 2023 K-1 had already been sent.

31.     On January 24, 2024, Mr. Liang requested a $5,000 loan from Ms. Liu, claiming it was necessary to cover WSFB employee payroll because he had lost his credit card. Upon information and belief, this demonstrated that WSFB was already financially unstable in 2024.

32.     On June 18, 2024, Mr. Liang solicited another short-term loan from Ms. Liu, this time to finance a purported distribution project, promising repayment within five months with a 6% return. Ms. Liu, increasingly alarmed by the possibility that WSFB was not operating as successfully as Mr. Liang had represented, refused.

33.     On November 11, 2024, Mr. Liang informed Ms. Liu that WSFB planned to hold a shareholder meeting before the end of the year.

34.     On December 23, 2024, Ms. Liu asked Mr. Liang whether the taxes had been filed and when dividends would be distributed. Mr. Liang continued to delay the filing and the shareholder meeting to January 2025.

35.     On February 2, 2025, Ms. Liu called Mr. Liang and informed her intent to sell her equity. Mr. Liang claimed that the matter would be addressed at the shareholder meeting.

36.     On February 5, 2025, Ms. Liu asked about the shareholder meeting. Mr. Liang stated that it would be held in two weeks due to a purported delay filing taxes. *See id.*, pp. 11-12.

37.     On March 14, 2025, Ms. Liu inquired again about tax filings. Mr. Liang responded that he had submitted them and that the shareholder meeting would take place on March 21.

38.     On March 19, 2025, Ms. Liu asked about her dividend. Mr. Liang claimed WSFB would not issue if it lost money in 2024, despite Ms. Liu's entitlement to a 4% preferred return under § 4.1 of the Agreement. *See* Ex. 5, § 4.1.

39.     On March 20, 2025, Mr. Hinton cancelled the shareholder meeting and claimed that tax filings would not be finalized until April 15, 2025.

40.     On April 11, 2025, Ms. Liu received a Schedule K-1 for 2024 ("2024 K-1"), which would have reported her share of WSFB's gains, losses, deductions, credits, and other distributions for the tax year ending on December 31, 2024. A copy of the 2024 K-1 is attached hereto as Ex. 6.

41.     The 2024 K-1 listed a beginning book value of only $38,025, indicating an immediate $11,975 loss within weeks of Ms. Liu's December 2023 investment. *See id*., p. 2. Without her 2023 K-1 to verify this depreciation, Ms. Liu has been unable to properly assess its accuracy or reasonably determine WFSB's financial situation.

42.     Further, WSFB's 2024 tax filings reported only $703,848 in combined revenue, far below the $2.45 million projection Mr. Liang presented during his solicitation. A copy of WSFB's tax filings in 2024 is attached hereto Ex. 7; *see also* Ex. 3, p. 18.

43.     WSFB's 2024 tax filings reported the cost of goods sold at 56%, far exceeding the restaurant industry standard of approximately 25%. *See* Ex. 7, p. 5.

44.     WSFB's 2024 tax filings demonstrated that it claimed an unusually high cost of subcontractors ($186,829), far exceeding total employee wages and accounting for more than 25% of reported revenue. *See id*., p. 13.

45.     WSFB's 2024 tax filings listed rent expenses of $138,426, exceeding the amount provided in WSFB's lease agreement. *See id*., p. 5.

46.     Upon information and belief, WSFB engaged in fraudulent accounting practices based on its 2024 tax filings.

47. Upon further investigation, Ms. Liu discovered WSFB conducted unrecorded delivery orders and sales through means such as the "Water Song Little Kitchen" cash top-up program and a lunch delivery service.

48. These transactions, which have been conducted exclusively in cash or via Zelle, were not reflected in WSFB's point-of-sale (POS) system, tax filings, or financial statements.

49. To date, Ms. Liu has identified at least $70,000 in unreported revenue from these off-book transactions.

50. In breach of the Agreement, Defendants have refused to provide complete financial records accounting for the unreported revenue, or otherwise address the off-book transactions, despite repeated demands. *See* Ex. 5, §§ 8.2, 8.4.

51. In breach of the Agreement, Defendants have failed to provide Ms. Liu with complete financial records for WSFB, including, but not limited to, K-1 forms, year-end financial reports, financial or bank statements, despite repeated demands. *See id*.

52. As a result, Ms. Liu has been deprived of her membership rights and ability to ascertain WSFB's financial standing and the state of her investment. *See id*., § 1.17.

53. Upon information and belief, Defendants have engaged in systematic accounting fraud to defraud its members/investors and misappropriate funds.

**C. Defendants' fraud**

54. Defendants fraudulently induced Ms. Liu to purchase WSFB's security by making false promises of dividends and misrepresentations regarding WSFB's performance. Defendants knew or should have known at the time that WSFB was underperforming and incapable of generating the promised 16% annual return and 4% preferred return.

55.    At the time of Ms. Liu's investment in December 2023, Mr. Liang, as WSFB's co-founder, owner, CEO, primary operator, agent, and *de facto* majority shareholder, knew that the business was not profitable and failing but nevertheless assured Ms. Liu of WSFB's high profitability and guaranteed returns.

56.    Mr. Liang, or any other agent of WSFB, failed to provide Ms. Liu with an investor financial report or any other financial statements or information pertaining to WSFB's performances or standing in 2023.

57.    In reliance of Mr. Liang's assurances made in December 2023, Ms. Liu believed that WSFB's equity value would not immediately diminish in 2024 and that her 4% equity stake would be unencumbered by pre-existing financial liabilities.

58.    The 2024 K-1 revealed that Ms. Liu's equity value had already depreciated to $38,025 as of January 1, 2024, representing an immediate loss of $11,975 less than three weeks of her investment. By the end of 2024, the value had further declined to $30,649. *See* <u>Ex. 6</u>, p. 2.

59.    Defendants knew or should have known that $50,000 did not reflect the true value of a 4% equity interest in WSFB. In order to fraudulently induce Ms. Liu's investment, Mr. Liang concealed and/or failed to exercise due care in disclosing WSFB's poor financial condition and misrepresented its profitability.

60.    Mr. Liang misrepresented the operation, success, and projected revenue of WSFB's Street Food location to defraud Ms. Liu and induce her investment. Ms. Liu has since discovered that Street Food was not in operation at the time of Mr. Liang's solicitation.

61.    Upon information and belief, WSFB closed Street Food in or around October 2023 due to poor performance and rebranded its operation in Towson as Chicken Lab, which did not begin operations until May 2024 at the earliest.

62.     Further, Mr. Liang misrepresented the financial standing and profitability of WSFB's Yunnan Kitchen operations.

63.     Mr. Liang also misrepresented WSFB's status of and plans for expansion to DC and Philadelphia to defraud Ms. Liu and induce her investment.

64.     Upon information and belief, WSFB has been tied to Mr. Liang's H-1B visa status. As such, Mr. Liang has been incentivized to inflate performance metrics, conceal financial risks, and mislead investors like Ms. Liu to protect WSFB's viability and his own immigration status.

65.     Upon information and belief, Mr. Liang, and potentially other members of WSFB, including, but not limited to, his mother Kun Chen, his mother-in-law Wen Lin, and Mr. Hinton, misappropriated WSFB's unreported revenue for personal use. Mr. Liang encouraged WSFB's customers to pay in cash in exchange for discounts, diverting at least $70,000 in revenue from WSFB's financial statements.

66.     Over 17 months have passed, and to date, WSFB has failed to open a DC or Philadelphia location as assured by Mr. Liang and has made no dividend distributions.

67.     In early 2025, upon discovering WSFB's numerous fraudulent and questionable business practices, Ms. Liu sought to recover her investment by selling her equity back to Mr. Liang. In response, Mr. Liang told her to hold tight and indicated he would buy back her shares by the end of 2026—conveniently aligning with the expiration of Maryland's three-year statute of limitations for most civil actions.

## COUNT I:
## Violation of 15 U.S.C. § 77l
### (Against All Defendants)

68.     Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

69.     15 U.S.C. § 77l(a)(2) states as follows:

> [any person who] offers or sells a security … by the use of any means or instruments of transportation or communication in interstate commerce or of the mails, by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading (the purchaser not knowing of such untruth or omission), and who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of such untruth or omission, shall be liable, subject to subsection (b), to the person purchasing such security from him …

*Id.*

70.     Mr. Liang presented himself to Ms. Liu as the owner, CEO, primary operator, agent, and *de facto* majority shareholder of WSFB.

71.     In his interactions with Ms. Liu in November and December 2023, Mr. Liang directly solicited an offer to buy WSFB's security.[2]

72.     Mr. Liang successfully solicited Ms. Liu's purchase of WSFB's security and was motivated at least in part by a desire to service his own financial interests or those of other shareholders of WSFB, including, but not limited to, Mr. Hinton and Mses. Chen and Lin.

73.     WSFB, as a Maryland-based LLC, utilized means of interstate commerce when it directly offered and sold its security to Ms. Liu, who is a resident of New York, over the internet and through other means such as a virtual meeting platform, texts, email, etc. Mr. Liang facilitated the sale of WSFB's security by the use of instruments of communication in interstate commerce.

74.     Defendants made material misrepresentations that WSFB owns and operates two successful restaurant locations to fraudulently induce Ms. Liu's purchase of its security.

---

[2] Per 15 U.S.C. § 77b, the security offered by Defendants is construed under a broad definition as follows: "any stock … transferable share … or, in general, any interest or instrument commonly known as a 'security.'" *Id.*

75. Specifically, Mr. Liang made affirmatively false statements to Ms. Liu that Street Food was operating as of December 2023, and that its operation has been a central component of WSFB's success in the past and will be for the future.

76. Mr. Liang further made misrepresentations during his presentation of the Investor Deck with Ms. Liu. The Investor Deck states that WSFB's "2nd location opened in November 2022 with strong start" and includes images of customers at Street Food. Ex. 3, pp. 4, 14.

77. Moreover, WSFB's financial projections of revenue, cost, and net profit integrate Street Food—described as "Water Song Towson"—into their respective totals. *Id*., pp 18-21. In the Investor Deck, Defendants represent Street Food contributes to WSFB's profitability.

78. Defendants knew these representations were false or made them with such reckless disregard for the truth that knowledge of the falsity of these statements can be imputed to them.

79. In or around July 2025, Ms. Liu discovered that Street Food was inoperable at the time of Mr. Liang's solicitation and Ms. Liu's purchase of WSFB's security in December 2023. Upon information and belief, Street Food permanently closed on or around October 21, 2023.

80. Neither Mr. Liang, any other agent of WSFB, nor the Investor Deck disclosed the fact that Street Food was closed in December 2023. Nor did they offer Ms. Liu any cautionary statement regarding the speculative nature of WSFB's projected profitability deriving from Street Food or identify any important factors that could cause actual results to differ materially from those in WSFB's projected profitability derived from Street Food.

81. Without Defendants' disclosure of the material fact above, Ms. Liu justifiably relied on their false representations of Street Food's success and its contribution to WSFB's profitability.

82.     Such misrepresented facts were material as there is a substantial likelihood that a reasonable purchaser of WSFB's security would have considered such facts important in deciding whether to buy the security.

83.     Further, Defendants' omission regarding Street Food's closure was material as there is a substantial likelihood that a reasonable purchaser of WSFB's security would have viewed the total mix of information made available to be significantly altered by disclosure of such fact.

84.     Defendants made material misrepresentations pertaining to WSFB's financial status and performances in 2023 to fraudulently induce Ms. Liu's purchase of its security.

85.     When soliciting Ms. Liu's investment, Mr. Liang made an affirmatively false statement that WSFB received $1.5 million in revenue in 2023 and was highly profitable based on successes of both Yunnan Kitchen and Street Food.

86.     Mr. Liang knew this representation was false or made it with such reckless disregard for the truth that knowledge of the falsity of such statement can be imputed to him.

87.     In or around July 2025, POS data of Yunnan Kitchen retrieved by Ms. Liu revealed that Mr. Liang substantially inflated WSFB's finances in 2023. Based on the POS data, Yunnan Kitchen's revenue in 2023 was $513,394 with net sales only being $446,707.45. A copy of the screenshots of Yunnan Kitchen POS data is attached hereto as Ex. 8. *See id*.

88.     The POS data further demonstrates that Yunnan Kitchen's revenue in 2023 decreased by 27.54% compared to the preceding year, as its revenue in 2022 was $677,353.36 with net sales being $578,607.66. *See id*. Given these figures, along with the fact that Street Food permanently closed in October 2023 due to its underperformance, it is extremely unlikely that WSFB's total revenue in 2023 reached $1.5 million.

89.     Without Defendants' disclosure of the material fact that WSFB's revenue figure in 2023 was inflated and that WSFB's operations for Yunnan Kitchen and Street Food were not projected to reach $1.5 million in revenue, Ms. Liu justifiably relied on their false representations of WSFB's profitability in 2023 and continued success through Yunnan Kitchen and Street Food.

90.     Such misrepresented facts were material as there is a substantial likelihood that a reasonable purchaser of WSFB's security would have considered such facts important in deciding whether to buy the security.

91.     Further, Defendants' omissions regarding WSFB's inflated finances and both locations' poor economic performances were material as there is a substantial likelihood that a reasonable purchaser of WSFB's security would have viewed the total mix of information made available to be significantly altered by disclosure of such fact.

92.     Defendants made an omission of a material fact regarding WSFB's incurred losses for 2023 and the negative impact of such losses on Ms. Liu's equity value.

93.     When soliciting investment from Ms. Liu in December 2023, Defendants failed to disclose that WSFB was projected to incur losses for 2023. Even worse, Defendants neglected to inform Ms. Liu that she was liable for such losses and that, immediately following the investment, her equity value would diminish significantly. Instead, Defendants represented that WSFB was highly profitable and would yield returns based on successes of Yunnan Kitchen and Street Food.

94.     Without Defendants' disclosure of the material fact that Ms. Liu's equity value was liable for losses incurred in 2023, Ms. Liu justifiably relied on their false representations of the return on her investment in WSFB securities.

95.     Defendants never shared WSFB's financial report for the 2023 taxable year with Ms. Liu despite being obligated to do so per the Agreement. *See* Ex. 5, § 8.4.

96.     It was not until receiving the 2024 Schedule K-1 on April 11, 2025, the first instance of Ms. Liu's acquisition of WSFB's financial information, that Ms. Liu discovered her equity value immediately diminished contrary to Defendants' representations.

97.     Per the 2024 Schedule K-1 provided by Defendants, Ms. Liu's equity value had already depreciated to $38,025 at the beginning of 2024, representing a loss of $11,975, or a 24% decrease, less than three weeks of her investment. By the end of 2024, the value of her shares had further declined to $30,649, a 39% loss from her investment in December 2023. *See* Ex. 6, p. 2.

98.     Such omission of material facts was material as there is a substantial likelihood that a reasonable purchaser of WSFB's security would have considered such facts important in deciding whether to buy the security and viewed the total mix of information made available to be significantly altered by disclosure of such facts.

99.     Defendants made material misrepresentations that its expansions to DC and Philadelphia were impending to fraudulently induce Ms. Liu's purchase of its security.

100.    While presenting the Investor Deck to Ms. Liu, Mr. Liang stated that WSFB would expand to DC by April 2024 and Philadelphia by December 2024 to early 2025. Notably, Mr. Liang stated that WSFB had already secured a lease for the DC location, expected to open by 2024.

101.    Mr. Liang further affirmed that such expansion would contribute significantly to WSFB's revenue, which is evidenced by WSFB's financial projections in the Investor Deck. The Investor Deck shows that the two locations' revenue constituting more than 50% of WSFB's total revenue beginning in 2025, with net profit continuing to increase substantially thereafter. *See* Ex. 3, pp. 18, 21; *see also id*., p. 23 ("Estimated Sale profit after 4 locations is 2x in 3 Years").

102.    Moreover, Mr. Liang asserted WSFB's plan for expansion was to open "10 additional locations in the next three years [from 2023] ..." *Id*., p. 5.

103.	Defendants knew these representations to be false or made them with such reckless disregard for the truth that knowledge of the falsity of these statements can be imputed to them.

104.	Despite Defendants' representations, to date, WSFB has failed to open a location in either DC or Philadelphia. Upon receiving the 2024 Schedule K-1 on April 11, 2025, Ms. Liu realized that WSFB's expansion plans were fraudulent/misleading and that Defendants lacked a reasonable basis for making projections for expansion, as the expansion could not have been materialized within a reasonable timeframe given WSFB's poor financial status and performances.

105.	Further, despite requests, Defendants failed to provide any evidence to suggest that WSFB had secured a lease in DC or was otherwise prepared to expand to DC and Philadelphia.

106.	Further, Defendants' projections of future expansions lacked a reasonable basis for and were misleading to Ms. Liu.

107.	Neither Mr. Liang, any other agent of WSFB, nor the Investor Deck disclosed the fact that WSFB was unable to reasonably meet its plan for expansion within three years given its financial status and economic performance. Nor did they offer Ms. Liu any cautionary statement regarding the speculative nature of WSFB's expansion plans and projected profitability deriving from the DC and Philadelphia locations nor identify any important factors that could cause actual results to differ materially from those in WSFB's expansion plans or financial projections that had the two locations' revenue constituting more than 50% of WSFB's total revenue beginning in 2025, with net profit continuing to increase. *See id*., pp. 5, 18-23.

108.	Without Defendants' disclosure of the material fact that WSFB could not reasonably achieve its expansion plans within three years given its circumstances, Ms. Liu justifiably relied on their false representations of WSFB's expansions to DC and Philadelphia and its enhanced profitability derived from both locations.

109.    Such misrepresented facts were material as there is a substantial likelihood that a reasonable purchaser of WSFB's security would have considered such facts important in deciding whether to buy the security.

110.    Further, Defendants' omission regarding WSFB's inability to achieve its expansion plans was material as there is a substantial likelihood that a reasonable purchaser of WSFB's security would have viewed the total mix of information made available to be significantly altered by disclosure of such fact.

111.    Defendants made material misrepresentations pertaining to WSFB's financial projections and guaranteed return on investment, to fraudulently induce Ms. Liu's purchase of its security.

112.    When soliciting Ms. Liu's investment, Mr. Liang stated that WSFB's revenue and net profit would continue to grow based on the prior success of Yunnan Kitchen and Street Food and through WSFB's expansions to DC and Philadelphia.

113.    On the Investor Deck that Mr. Liang presented to Ms. Liu, WSFB projected $2.45 million in revenue in 2024 and continued growth through 2028. *See* Ex. 3, pp. 18, 21. Notably, the projected revenue for WSFB's DC and Philadelphia locations constitute more than 50% of WSFB's total revenue beginning in 2025, with net profit continuing to increase. *See id*.; *see also id*., p. 23 ("Estimated Sale profit after 4 locations is 2x in 3 Years").

114.    Further, Mr. Liang promised a 16% annual return. *See* Ex. 2, p 1.

115.    Defendants knew these representations were false or made them with such reckless disregard for the truth that knowledge of the falsity of these statements can be imputed to them.

116.    Upon receiving the 2024 Schedule K-1 on April 11, 2025, Ms. Liu realized that Defendants misled her with overstated projections based on false propositions.

117.    WSFB's 2024 tax filings demonstrated that its total revenue in 2024 was only $703,848 in combined revenue, far less than WSFB's projections of $2.45 million that it represented to Ms. Liu prior to her investment. *See* <u>Ex. 7</u>, p. 5.

118.    Defendants made misleading projections to Ms. Liu by incorporating financial projections of the DC and Philadelphia locations which they knew or should have known would never materialize, as well as exaggerating the successes of Yunnan Kitchen and Street Food.

119.    Defendants' financial projections and guaranteed return on investment were worded as guarantees and supported by specific statements of fact that were themselves false and misleading. Defendants further lacked a reasonable basis for making such projections.

120.    Neither Mr. Liang, any other agent of WSFB, nor the Investor Deck disclosed the fact that WSFB's financial projections were far from their actual financial status and performances. Nor did they offer Ms. Liu any cautionary statement regarding the speculative nature of WSFB's financial projections and guaranteed 16% annual return, nor identify any important factors that could cause actual results to differ materially from those in WSFB's financial projections.

121.    Without Defendants' disclosure of the material fact above and any cautionary statement, Ms. Liu justifiably relied on their false representations of WSFB's guaranteed impending growth and thereby returns to its investors.

122.    Such misrepresented facts were material as there is a substantial likelihood that a reasonable purchaser of WSFB's security would have considered such facts important in deciding whether to buy the security.

123.    Further, Defendants' omission regarding WSFB's true financial status and performances and implausibility of its expansion plans, which was made to provide Ms. Liu with misleading projections, was material as there is a substantial likelihood that a reasonable purchaser

of WSFB's security would have viewed the total mix of information made available to be significantly altered by disclosure of such fact.

124.     As a result of Defendants' material misrepresentations and omissions of material facts, Ms. Liu has suffered damages in an amount more than $75,000.

125.     Per 15 U.S.C. § 77o, Mr. Hinton, as Managing Member of WSFB, *see* <u>Ex. 5</u>, § 1.15, and Mr. Liang, as WSFB's owner, CEO, primary operator, agent, and *de facto* majority shareholder, are jointly and severally liable with and to the same extent as WSFB by or through stock ownership and/or agency.

WHEREFORE, Plaintiff respectfully asks this Court:

- Enter judgment against all Defendants, jointly and severally, for compensatory damages in an amount more than $75,000, plus interest, attorneys' fees, and the costs of this action; and

- Grant any other such relief that it sees fit.

### COUNT II:
### Violations of 15 U.S.C. § 78j(b) and 17 CFR § 240.10b-5
### (Against All Defendants)

126.     Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

127.     In pertinent part, 15 U.S.C § 78j states as follows:

> It shall be unlawful for any **person**, directly or indirectly, by the use of any means or instrumentality of **interstate commerce** or of the mails, or of any **facility** of any national security **exchange** ... (b) To use or employ, in connection with the purchase or sale of any security registered on a national security exchange or any security not so registered … any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

*Id.*

128.     17 CFR § 240.10b-5, states:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,

in connection with the purchase or sale of any security.

*Id.*

129.    Defendants failed to disclose the permanent closure of Street Food at the time they solicited Ms. Liu's purchase of WSFB's security, despite knowing that such information was material to the valuation and future profitability of WSFB. *See supra*, ¶¶ 74-80.

130.    Defendants concealed WSFB's losses for 2023 and affirmatively inflated reported revenues to mislead Ms. Liu regarding WSFB's financial standing and to induce her investment. *See supra*, ¶¶ 84-88.

131.    Defendants failed to disclose that Ms. Liu would be liable for WSFB's losses in 2023, despite having invested 17 days before the close of the taxable year. *See supra*, ¶¶ 92-97.

132.    Defendants misrepresented WSFB's future profitability by presenting inflated revenue projections that were premised on false assumptions, including the continued operation of Street Food and the establishment of additional WSFB locations. *See supra*, ¶¶ 111-120.

133.    Defendants failed to disclose that WSFB's proposed expansion into DC and Philadelphia was not viable, given Street Food's permanent closure and Yunnan Kitchen's underperformance. *See supra*, ¶¶ 99-107.

134.     When soliciting Ms. Liu and inducing her purchase of WSFB's security, Mr. Liang made material misrepresentations and omissions of material facts with a mental state embracing intent to deceive, manipulate, and defraud Ms. Liu.

135.     Mr. Liang's state of mind is probative of WSFB's scienter, as Mr. Liang made such misrepresentations and omissions as the owner, CEO, primary operator, agent, and *de facto* majority shareholder of WSFB.

136.     Taken collectively, the facts contained herein clearly demonstrate Defendants' scienter through their (i) actual intent to defraud Ms. Liu and (ii) deliberate recklessness in making highly unreasonable omissions involving an extreme departure from the standards of ordinary care and presenting a danger of misleading Ms. Liu that is either known to Defendants or is so obvious they must have been aware of it.

137.     Ms. Liu justifiably relied on Defendants' material misrepresentations and omissions of material facts. *See supra*, ¶¶ 81, 89, 94, 108, 121.

138.     There is an immediate nexus between Defendants' material misrepresentations and omissions and Ms. Liu's decision to purchase WSFB's security, as she would not have done so absent such misrepresentations and omissions.

139.     Due to Defendants' material misrepresentations and omissions of material facts, Ms. Liu was fraudulently induced to purchase 4% equity in WSFB at an extremely inflated value of $50,000 and faced an immediate loss of $12,000 less than three weeks of her purchase and a loss of $20,000 within a year.

140.     When soliciting investment from Ms. Liu in December 2023, Defendants misrepresented the value of equity in WSFB. According to the Investor Deck, WSFB sought

$350,000 for a 28% stake in the company, which demonstrates that WSFB's purported valuation was at $1.25 million. *See* <u>Ex. 3</u>, p. 23.

141.    Defendants knew or should have known that (i) WSFB's incurred losses in 2023 were at least $300,000, (ii) Yunnan Kitchen's revenue in 2023 was $513,394 with net sales only being $446,707.45, indicating a 27.54% decrease compared to the preceding year, and (iii) Street Food was closed in October 2023 due to underperformance. With these facts, Defendants knew or should have known that their valuation of WSFB was unreasonable.

142.    By failing to disclose these facts to Ms. Liu, coupled with fraudulent financial projections and expansion plans, Defendants fraudulently induced her to purchase 4% equity in WSFB at an extremely inflated value of $50,000. To her detriment, Ms. Liu justifiably relied upon Defendants' inflated valuation of WSFB's equity.

143.    Less than three weeks of her purchase, Ms. Liu's equity value decreased by $11,975. Per the 2024 K-1 provided by Defendants, the beginning book value was only $38,025. By the end of 2024, her equity value had reduced by 39% to $30,649. *See* <u>Ex. 6</u>, p. 2.

144.    Defendants knew or should have known that Ms. Liu's equity value would face an immediate loss given their unreasonable valuation of WSFB and WSFB's poor financial status and performance in 2023.

145.    As such, Ms. Liu suffered damages proximately caused by Defendants.

146.    Per 15 U.S.C. § 78t, Mr. Hinton, as Managing Member of WSFB, *see* <u>Ex. 5</u>, § 1.15, and Mr. Liang, as WSFB's owner, CEO, primary operator, agent, and *de facto* majority shareholder, are jointly and severally liable with and to the same extent as WSFB by or through stock ownership and/or agency.

147.     As a result of Defendants' fraudulent actions, Ms. Liu has suffered damages in an amount more than $75,000.

WHEREFORE, Plaintiff respectfully asks this Court:

- Enter judgment against all Defendants, jointly and severally, for compensatory damages in an amount more than $75,000, plus interest, attorneys' fees, and the costs of this action; and

- Grant any other such relief that it sees fit.

### COUNT III:
### Violation of MD Corporations and Associations Code §§ 11-301 and 11-703
### (Against All Defendants)

148.     Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

149.     MD Corporations and Associations Code § 11-301 states as follows:

> It is unlawful for any person, in connection with the offer, sale, or purchase of any security, directly or indirectly to:
>
> (1) Employ any device, scheme, or artifice to defraud;
>
> (2) Make any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading; or
>
> (3) Engage in any act, practice, or course of business which operates or would operate as a fraud or deceit on any person.

*Id.*

150.     MD Corporations and Associations Code § 11-703 states, in pertinent part:

> (a) (1) A person is civilly liable to the person buying a security from him if he … (ii)  Offers or sells the security by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, the buyer not knowing of the untruth or omission, and if he does not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the untruth or omission.

*Id.*

151.     Defendants made numerous material misrepresentations and omissions to state material facts when soliciting Ms. Liu's purchase of WSFB's security. *See e.g.*, *supra*, ¶¶ 74, 84, 92, 99, 111.

152.     When soliciting Ms. Liu and causing her purchase of WSFB's security, Mr. Liang made material misrepresentations and omissions of material facts with a mental state embracing intent to deceive, manipulate, and defraud Ms. Liu.

153.     Mr. Liang's state of mind is probative of WSFB's scienter, as Mr. Liang made such misrepresentations and omissions as WSFB's owner, CEO, primary operator, agent, and *de facto* majority shareholder.

154.     Through such misrepresentations and omissions, Defendants employed a device, scheme, and artifice to defraud Ms. Liu and induce her purchase of WSFB's security.

155.     Taken collectively, all of the facts contained herein clearly demonstrate Defendants' scienter through their (i) actual intent to defraud Ms. Liu and (ii) deliberate recklessness in making highly unreasonable omissions involving an extreme departure from the standards of ordinary care and presenting a danger of misleading Ms. Liu that is either known to Defendants or is so obvious they must have been aware of it.

156.     Ms. Liu justifiably relied on Defendants' material misrepresentations and omissions of material facts. *See supra*, ¶¶ 81, 89, 94, 108, 121.

157.     There is an immediate nexus between Defendants' material misrepresentations and omissions and Ms. Liu's decision to purchase WSFB's security, as she would not have done so absent such misrepresentations and omissions.

158.     Ms. Liu has suffered damages proximately caused by Defendants' misrepresentations and omissions of material facts. *See supra*, ¶¶ 139-145.

159. Per MD Corporations and Associations Code § 11-703(c)(1), Mr. Hinton, as Managing Member of WSFB, *see* <u>Ex. 5</u>, § 1.15, and Mr. Liang, as WSFB's owner, CEO, primary operator, agent, and *de facto* majority shareholder, are jointly and severally liable with and to the same extent as WSFB by or through stock ownership and/or agency.

WHEREFORE, Plaintiff respectfully asks this Court:

- Enter judgment against all Defendants, jointly and severally, for compensatory damages in an amount more than $75,000, plus interest, attorneys' fees, and the costs of this action; and

- Grant any other such relief that it sees fit.

## COUNT IV:
## Unjust Enrichment
## (Against WSFB)

160. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

161. Ms. Liu conferred a direct financial benefit upon WSFB by purchasing its security in the amount of $50,000.

162. WSFB was well-aware and had knowledge of the benefits of Ms. Liu's purchase.

163. At the time of her purchase, WSFB, through Mr. Liang, represented to Ms. Liu that she would receive a guaranteed 16% annual return and a 4% preferred return. *See supra*, ¶ 13.

164. WSFB, through Mr. Liang further represented, and Ms. Liu relied upon, false and misleading statements concerning the financial status and performances of WSFB, which fraudulently induced her to purchase WSFB's security at an artificially inflated value. *See supra*, ¶¶ 129-143.

165. WSFB knew, or should have known, that Ms. Liu made her investment in reliance of those misrepresentations and reasonably expected either the promised returns or, at a minimum, repayment of her investment.

166.     Contrary to its representations, WSFB engaged in fraudulent business and accounting practices that directly diminished and jeopardized the value of Ms. Liu's equity value. *See supra*, ¶¶ 41-49.

167.     By fraudulently inducing Ms. Liu to invest at an inflated value, failing to distribute any returns, and refusing to return her $50,000 payment despite demand, WSFB has unjustly retained the financial benefit conferred upon it by Ms. Liu.

168.     Under these circumstances, it would be unjust and inequitable for WSFB to have benefitted from Ms. Liu's purchase while depriving her of the promised returns and jeopardizing the value of her equity through fraud.

169.     As a result of WSFB's unjust enrichment, Ms. Liu has suffered damages in an amount more than $75,000.

WHEREFORE, Plaintiff respectfully asks this Court:

- Enter judgment against Defendant Water Song Food and Beverage, LLC for compensatory damages in an amount more than $75,000, plus interest, attorneys' fees, and the costs of this action; and

- Grant any other such relief that it sees fit.

### COUNT V:
### Breach of Contract
### (Against WSFB)

170.     Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

171.     In December 2023, Ms. Liu entered into a valid and enforceable agreement with WSFB, through Mr. Liang, who acted on behalf of WSFB as its owner, CEO, primary operator, agent, and *de facto* majority shareholder.

172.     Under the terms of the agreement, Ms. Liu agreed to purchase WSFB's security for $50,000. In exchange, WSFB, through Mr. Liang, expressly promised that Ms. Liu would receive a guaranteed 16% annual return and a 4% preferred return on her equity interest.

173.     Ms. Liu fully performed her obligations under the agreement by paying $50,000 to WSFB. On December 15, 2023, Ms. Liu wired $25,000 to the WSFB's bank account. Three days later, she wired the remaining $25,000. *See* Ex. 2, pp. 7-10.

174.     WSFB breached its agreement with Ms. Liu by failing to provide the guaranteed 16% annual return and distribute the 4% preferred return.

175.     As a result of WSFB's breach, Ms. Liu has suffered damages in an amount more than $75,000.

WHEREFORE, Plaintiff respectfully asks this Court:

- Enter judgment against Defendant Water Song Food and Beverage, LLC for compensatory damages in an amount more than $75,000, plus interest, attorneys' fees, and the costs of this action; and

- Grant any other such relief that it sees fit.

**COUNT VI:**
**Breach of Contract**
**(Against Andrew Hinton)**

176.     Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

177.     Ms. Liu and Mr. Hinton entered into a valid and enforceable Agreement regarding the establishment, management, and operation of WSFB.

178.     Ms. Liu fully performed her obligations under the Agreement, including paying $50,000 to WSFB in exchange for 4% equity and complying with her duties as a Member.

179.     Mr. Hinton executed and assumed obligations under the Agreement as WSFB's Managing Member and Founding Member. *See* Ex. 5, §§ 1.11, 1.15, 5.1.1.

180.    Under the Agreement, Mr. Hinton, as Managing Member, had the authority and

duty to manage WSFB's business and affairs, maintain proper books and records, ensure financial

transparency, safeguard company funds, and distribute returns to Members in accordance with the

Agreement. *See id.*, §§ 1.11, 1.17, 4.1, 5.1.1, 5.1.2, 5.4.1, 8.1, 8.2, 8.4, 9.1.

181.    Specifically, the Agreement required Mr. Hinton to:

i.    Provide Members, including Ms. Liu with inspection rights to WSFB's books and records (§§ 1.17, 8.2);

ii.    Distribute Ms. Liu's preferred return equal to 4% per annum and any additional cash flow distributions (§§ 1.22, 4.1);

iii.   Deposit all funds of WSFB in a WSFB-designated bank account, and ensure such funds were properly accounted for (§ 8.1);

iv.   Send to each Member a complete accounting of WSFB's affairs within seventy-five (75) days after the close of each taxable year (§ 8.4); and

v.    Execute all certificates and other documents, and undertake all filings, recording, publishing, and other acts to comply with the law for the formation and operation of WSFB (§ 9.1).

182.    In breach of §§ 1.17, 8.2 and 8.4, Mr. Hinton failed to provide Ms. Liu with a

complete accounting of WSFB's affairs upon the close of each taxable year and access to financial

documents, including, but not limited to, the 2023 K-1.

183.    In breach of § 4.1, Mr. Hinton failed to distribute Ms. Liu's preferred return at the

agreed rate and on the agreed schedule.

184.    In breach of § 8.1, Mr. Hinton failed to deposit all funds of WSFB in a bank account

accessible to Ms. Liu. Instead, WSFB's unreported revenue of more than $70,000 is deposited in

an unknown bank account for the personal benefit of Mr. Hinton and his associates.

185.    In breach of § 9.1, Mr. Hinton committed accounting fraud and failed to publish

records of WSFB's revenue generated through cash or via Zelle payments.

186.     Mr. Hinton willfully breached these contractual duties by concealing and falsifying WSFB's financial condition, withholding access to records, failing to distribute returns, and refusing to provide required accountings.

187.     Mr. Hinton's breaches were not inadvertent but calculated acts designed to conceal WSFB's fraudulent accounting and business practices, thereby preventing Ms. Liu from discovering the true financial state of WSFB and protecting his personal interests at her expense.

188.     As a result of Mr. Hinton's breaches, Ms. Liu has suffered damages in an amount more than $75,000.

WHEREFORE, Plaintiff respectfully asks this Court:

- Enter judgment against Andrew Hinton for compensatory damages in an amount more than $75,000, plus interest, attorneys' fees, and the costs of this action; and

- Grant any other such relief that it sees fit.

**COUNT VII:**
**Breach of Fiduciary Duty**
**(Against Colin Liang and Andrew Hinton)**

189.     Plaintiff incorporates the preceding paragraphs as if fully set herein.

190.     As the owner, CEO, primary operator, agent, and *de facto* majority shareholder of WSFB, Mr. Liang owed Ms. Liu a fiduciary duty under Maryland law of loyalty, care, and to act in good faith and in the best interests of WSFB and its members.

191.     As a managing member of WSFB per the Agreement, Mr. Hinton owed Ms. Liu, as a minority member of WSFB, a fiduciary duty under Maryland law of loyalty, care, and to act in good faith and in the best interests of WSFB and its members.

192.     Messrs. Liang and Hinton breached their fiduciary duties by, among other acts and omissions, asserting material misrepresentations to Ms. Liu, concealing material information about WSFB's business operations, misappropriating WSFB's funds, withholding her preferred return

distributions, failing to provide accurate financial statements and required accountings, and ceasing communication with Ms. Liu regarding WSFB's affairs. *See supra* ¶¶ 129-134, 181-187.

193.     In carrying out such acts and omissions, Messrs. Liang and Hinton engaged in fraudulent or otherwise grossly negligent conduct.

194.     As a result of Defendants' breaches, Ms. Liu has suffered damages in an amount more than $75,000.

WHEREFORE, Plaintiff respectfully asks this Court:

- Enter judgment against Defendants Colin Liang and Andrew Hinton for compensatory damages in an amount more than $75,000, plus interest, attorneys' fees, and the costs of this action; and

- Grant any other such relief that it sees fit.

## COUNT VIII:
## Fraudulent Concealment
## (Against All Defendants)

195.     Plaintiff incorporates the preceding paragraphs as if fully set herein.

196.     As the owner, CEO, primary operator, agent, and *de facto* majority shareholder of WSFB, Mr. Liang owed Ms. Liu a fiduciary duty under Maryland law of loyalty, care, and to act in good faith and in the best interests of WSFB and its members.

197.     As a managing member of WSFB per the Agreement, Mr. Hinton owed Ms. Liu, as a minority member of WSFB, a fiduciary duty under Maryland law of loyalty, care, and to act in good faith and in the best interests of WSFB and its members.

198.     At all relevant times, Defendants had knowledge or should have known WSFB's true financial condition, business operations, and accounting practices, and they owed Ms. Liu a duty to disclose such material facts arising from their fiduciary positions, contractual obligations, and the circumstances of inducing Ms. Liu's purchase of WSFB's security.

199.    Defendants knowingly and intentionally concealed from Ms. Liu material facts concerning, *inter alia*, (i) WSFB's fraudulent accounting and business practices, including, but not limited to, conducting off-book transactions and failing to report the revenue, (ii) WSFB's true financial condition and profitability, (iii) Mismanagement and misuse of company funds, and (iv) the falsity of promised distributions, including the 4% preferred return and 16% annual return.

200.    Defendants' concealment is apparent with its intentional acts to prevent Ms. Liu from obtaining WSFB's complete accounting, despite the Operating Agreement providing Ms. Liu with the rights to receive such information. *See* Ex. 5, §§ 1.17, 8.2. Further Defendants have failed to provide Ms. Liu with the 2023 K-1 nor give any explanation as to why Ms. Liu's equity value diminished by $12,000 less than three weeks of her investment.

201.    Defendants concealed these material facts with the intent to deceive Ms. Liu. Defendants knew that, had Ms. Liu been informed of these facts, she would not have continued as a member of WSFB and would have pursued actions to relinquish her 4% equity and protect her financial interests.

202.    Ms. Liu acted in justifiable reliance upon Defendants' concealment and omissions, believing that Messrs. Liang and Hinton were managing WSFB in good faith and in compliance with Mr. Hinton's obligations under the Agreement and Mr. Liang's representations when soliciting Ms. Liu's investment.

203.    In reliance on Defendants' concealment and omissions, Ms. Liu purchased 4% equity in and became a member of WSFB, refrained from withdrawing her equity, and did not take measures to protect her financial interests before her equity value plummeted.

204.    As a result of Defendants' fraudulent concealment, Ms. Liu has suffered damages in an amount more than $75,000.

WHEREFORE, Plaintiff respectfully asks this Court:

- Enter judgment against all Defendants for compensatory damages in an amount more than $75,000, plus interest, attorneys' fees, and the costs of this action;

- Award punitive damages in favor of Plaintiff against all Defendants, jointly and severally, in an amount to be determined at trial; and

- Grant any other such relief that it sees fit.

## COUNT IX:
### Negligent Misrepresentation
### (Against WSFB and Colin Liang)

205. Plaintiff incorporates the preceding paragraphs as if fully set herein.

206. When soliciting Ms. Liu's purchase of WSFB's security, Mr. Liang held himself out as the owner, CEO, primary operator, beneficiary member, and *de facto* majority shareholder of WSFB. Consequently, he owed Ms. Liu a duty of care to act in good faith and disclose all information that would have a material effect on WSFB's equity value.

207. At all relevant times, Defendants had knowledge or should have known WSFB's true financial condition, business operations, and accounting practices, and they owed Ms. Liu a duty to disclose such material facts arising from their fiduciary positions, contractual obligations, and the circumstances of inducing Ms. Liu's purchase of WSFB's security.

208. Defendants negligently asserted that Street Food was operating and was successful at the time they solicited Ms. Liu's purchase of WSFB's security. *See supra*, ¶¶ 74-80.

209. Defendants negligently asserted that WSFB generated $1.5 million in revenue for and were profitable 2023 and presented an inflated valuation of WSFB to Ms. Liu. *See supra*, ¶¶ 84-88.

210.    Defendants negligently asserted WSFB's future profitability by presenting inflated revenue projections that were premised on false assumptions, including the continued operation of Street Food and the establishment of additional WSFB locations. *See supra*, ¶¶ 111-120.

211.    Defendants negligently asserted WSFB's proposed expansion into DC and Philadelphia, despite being implausible given Street Food's permanent closure and Yunnan Kitchen's underperformance. *See supra*, ¶¶ 99-107.

212.    Defendants intended to have Ms. Liu act and rely upon these negligent and erroneous assertions. Defendants made these statements to induce Ms. Liu's investment.

213.    Defendants knew that Ms. Liu would rely upon and was, in fact, relying upon their negligent statements and that Ms. Liu would incur damages.

214.    Ms. Liu justifiably relied on Defendants' material misrepresentations and omissions of material facts. *See supra*, ¶¶ 81, 89, 94, 108, 121.

215.    As a result, Ms. Liu has suffered damages in an amount more than $75,000.

WHEREFORE, Plaintiff respectfully asks this Court:

- Enter judgment against Defendant Water Song Food and Beverage, LLC and Colin Liang for compensatory damages in an amount more than $75,000, plus interest, attorneys' fees, and the costs of this action;

- Award punitive damages in favor of Plaintiff against Defendants, jointly and severally, in an amount to be determined at trial; and

- Grant any other such relief that it sees fit.

## COUNT X:
### Intentional Misrepresentation
### (Against WSFB and Colin Liang)

216.    Plaintiff incorporates the preceding paragraphs as if fully set herein.

217.     When soliciting Ms. Liu and causing her purchase of WSFB's security, Defendants made material misrepresentations and omissions of material facts with a mental state embracing intent to deceive, manipulate, and defraud Ms. Liu.

218.     Defendants knowingly made false assertions that Street Food was operating and successful at the time they solicited Ms. Liu's purchase of WSFB's security. *See supra*, ¶¶ 74-80.

219.     Defendants knowingly made false assertions that WSFB generated $1.5 million in revenue for and were profitable 2023 and affirmatively inflated the valuation of WSFB to mislead Ms. Liu regarding WSFB's financial standing. *See supra*, ¶¶ 84-88.

220.     Defendants knowingly made false assertions regarding WSFB's future profitability by inflating revenue projections premised on false assumptions, including the continued operation of Street Food and the establishment of additional WSFB locations. *See supra*, ¶¶ 111-120.

221.     Defendants knowingly made false assertions regarding WSFB's proposed expansion into DC and Philadelphia, even though it was implausible given Street Food's permanent closure and Yunnan Kitchen's underperformance. *See supra*, ¶¶ 99-107.

222.     At all relevant times, Mr. Liang had knowledge or should have known WSFB's true financial condition, business operations, and accounting practices, and he owed Ms. Liu a duty to disclose such material facts arising from their fiduciary positions, contractual obligations, and the circumstances of inducing Ms. Liu's purchase of WSFB's security.

223.     Taken collectively, the facts contained herein clearly demonstrate Defendants' intent to deceive through their (i) actual intention to defraud Ms. Liu and (ii) deliberate recklessness in making highly unreasonable omissions involving an extreme departure from the standards of ordinary care and presenting a danger of misleading Ms. Liu that is either known to Defendants or is so obvious they must have been aware of it.

224. Defendants intended to have Ms. Liu act and rely upon these fraudulent and false assertions. Defendants made these statements with the intention to induce Ms. Liu's investment.

225. Defendants knew that Ms. Liu would rely upon and was, in fact, relying upon their false statements and that Ms. Liu would incur damages.

226. Ms. Liu justifiably relied on Defendants' material misrepresentations and omissions of material facts. *See supra*, ¶¶ 81, 89, 94, 108, 121.

227. As a result, Ms. Liu has suffered damages in an amount more than $75,000.

WHEREFORE, Plaintiff respectfully asks this Court:

- Enter judgment against Defendant Water Song Food and Beverage, LLC and Colin Liang for compensatory damages in an amount more than $75,000, plus interest, attorneys' fees, and the costs of this action;

- Award punitive damages in favor of Plaintiff against Defendants, jointly and severally, in an amount to be determined at trial, and

- Grant any other such relief that it sees fit.

### COUNT XI:
### Constructive Fraud
### (Against All Defendants)

228. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

229. As the owner, CEO, primary operator, agent, and *de facto* majority shareholder of WSFB, Mr. Liang owed Ms. Liu a fiduciary duty under Maryland law of loyalty, care, and to act in good faith and in the best interests of WSFB and its members.

230. As a managing member of WSFB per the Agreement, Mr. Hinton owed Ms. Liu, as a minority member of WSFB, a fiduciary duty under Maryland law of loyalty, care, and to act in good faith and in the best interests of WSFB and its members.

231. At all relevant times, Defendants had knowledge or should have known WSFB's true financial condition, business operations, and accounting practices, and they owed Ms. Liu a

duty to disclose such material facts arising from their fiduciary positions, contractual obligations, and the circumstances of inducing Ms. Liu's purchase of WSFB's security.

232. Defendants failed to disclose the permanent closure of Street Food at the time they solicited Ms. Liu's purchase of WSFB's security, despite knowing that such information was material to the valuation and future profitability of WSFB. *See supra*, ¶¶ 74-80.

233. Defendants concealed WSFB's losses for 2023 and affirmatively inflated reported revenues to mislead Ms. Liu regarding WSFB's financial standing and to induce her investment. *See supra*, ¶¶ 84-88.

234. Defendants failed to disclose that Ms. Liu would be liable for WSFB's losses in 2023, despite her having invested 17 days before the end of the taxable year. *See supra*, ¶¶ 92-97.

235. Defendants misrepresented WSFB's future profitability by presenting inflated revenue projections that were premised on false assumptions, including the continued operation of Street Food and the establishment of additional WSFB locations. *See supra*, ¶¶ 111-120.

236. Defendants failed to disclose that WSFB's proposed expansion into DC and Philadelphia was not viable, given Street Food's permanent closure and Yunnan Kitchen's underperformance. *See supra*, ¶¶ 99-107.

237. Further, Defendants knowingly and intentionally concealed from Ms. Liu material facts concerning, *inter alia*, (i) WSFB's fraudulent accounting and business practices, including, but not limited to, conducting off-book transactions and failing to report the revenue, (ii) WSFB's true financial condition and profitability, (iii) mismanagement and misuse of company funds, and (iv) the falsity of promised distributions, including the 4% preferred return and 16% annual return.

238. Defendants' concealment is apparent with its intentional acts to prevent Ms. Liu from obtaining WSFB's complete accounting, despite the Operating Agreement providing Ms. Liu

with the rights to receive such information. *See* <u>Ex. 5</u>, §§ 1.17, 8.2. Further Defendants have failed to provide Ms. Liu with the 2023 K-1 nor give any explanation as to why Ms. Liu's equity value diminished by $12,000 less than three weeks of her investment.

239.    Defendants breached their fiduciary duty intentionally, with malice, and/or with reckless disregard for Ms. Liu's rights as a Member of WSFB.

240.    Defendants' conduct has deceived and/or violated a confidence and has injured the public interest.

241.    As a result, Ms. Liu has suffered damages in an amount more than $75,000.

WHEREFORE, Plaintiff respectfully asks this Court:

- Enter judgment against all Defendants for compensatory and punitive damages in an amount more than $75,000, plus interest, attorneys' fees, and the costs of this action;

- Award punitive damages in favor of Plaintiff against all Defendants, jointly and severally, in an amount to be determined at trial; and

- Grant any other such relief that it sees fit.

**COUNT XII:**
**Specific Performance of Operating Agreement §§ 8.2 and 8.4**
**(Against WSFB and Andrew Hinton)**

242.    Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

243.    Section 9.3 of the Agreement states as follows:

> The parties recognize that irreparable injury will result from a breach of any provision of this Agreement and that money damages will be inadequate to remedy fully the injury. Accordingly, in the event of a breach or threatened breach of one or more of the provisions of this Agreement, any party who may be injured (in addition to any other remedies which may be available to that party) shall be entitled to one or more preliminary or permanent orders (i) restraining and enjoining any act which would constitute a breach or (ii) compelling the performance of any obligation which, if not performed, would constitute a breach.

Ex. 5, § 9.3.

244.    Per § 9.3 of the Agreement, Ms. Liu is entitled to seek specific performance against WSFB and Mr. Hinton for compliance with §§ 8.2 and 8.4.

245.    In breach of the Agreement, Defendants have deprived Ms. Liu of her right and ability to access documents that fully and completely account for any and all finances of WSFB. Further, Defendants have failed to provide Ms. Liu with a complete accounting of WSFB's affairs upon the close of each taxable year.

246.    Defendants' failure to comply with these provisions constitutes a continuing breach of the Agreement, causing irreparable harm to Ms. Liu.

247.    Ms. Liu has no adequate remedy at law and is entitled to an order of specific performance compelling Defendants to comply with §§ 8.2 and 8.4 of the Agreement by producing complete K-1 forms, books, records, financial statements, and tax documents of WSFB.

WHEREFORE, Plaintiff respectfully asks this Court:

- That Defendants be ordered by decree of this Court to perform their obligations under §§ 8.2 and 8.4 fully and completely account for any and all finances of WSFB and its affiliated entities, including all funds of WSFB not reported in WSFB's financial statements and otherwise misappropriated by Defendants Colin Liang and Andrew Hinton for personal use;

- That Defendants be ordered by decree of this Court to immediately provide financial records pertaining to WSFB and its affiliated entities, including, but not limited to: (i) Ms. Liu's K-1 forms from 2023 to present; (ii) financial statements that account for all missing information and attachments in WSFB's 2024 tax filings, as requested by Plaintiff; (iii) WSFB's bank statements from 2023 to present, and any other statements that demonstrate transaction histories for all of WSFB's business operations, including unrecorded, off-book transactions; (iv) financial statements for the WSFB's food distribution service from 2023 to present; (v) complete POS system access for WSFB and its affiliated entities; (vi) WSFB's subcontractor and payroll records, lease agreements, and other documents reflecting revenues, expenses, and capital structure dated 2023 to present; and

- Grant any other such relief that it sees fit.

## COUNT XIII:
### Accounting
### (Against All Defendants)

248.    Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

249.    By virtue of the Agreement and the fiduciary relationship between Ms. Liu and Messrs. Liang and Hinton, Defendants owe Ms. Liu a duty to account for all funds received and disbursed by WSFB and its affiliated entities.

250.    As stated herein, Defendants have engaged in numerous fraudulent accounting and business practices. *See supra*, ¶¶ 40-67.

251.    Further, Defendants made numerous material misrepresentations and omissions of material facts regarding WSFB's finances. *See e.g.*, *supra*, ¶¶ 74, 84, 92, 99, 111.

252.    Moreover, WSFB deposited more than $70,000 in unreported revenue from off-book transactions into undisclosed bank accounts. Mr. Liang has refused to address the off-book transactions. *See supra*, ¶¶ 47-50.

253.    Per the Agreement, Defendants are compelled to render a full and complete account for any and all finances of WSFB. *See* Ex. 5, §§ 8.2, 8.4.

254.    In breach of the Agreement, Defendants have deprived Ms. Liu of her right and ability to access documents that fully and completely account for any and all finances of WSFB. Further, Defendants have failed to provide Ms. Liu with a complete accounting of WSFB's affairs upon the close of each taxable year.

255.    In failure to render such accounting, Defendants have acted injuriously and harmfully towards Ms. Liu.

WHEREFORE, Plaintiff respectfully asks this Court:

- That Defendants be ordered by decree of this Court to fully and completely account for any and all finances of WSFB and its affiliated entities, including all funds of

WSFB not reported in WSFB's financial statements and otherwise misappropriated by Defendants Colin Liang and Andrew Hinton for personal use;

- That Defendants be ordered by decree of this Court to immediately provide financial records pertaining to WSFB and its affiliated entities, including, but not limited to: (i) Ms. Liu's K-1 forms from 2023 to present; (ii) financial statements that account for all missing information and attachments in WSFB's 2024 tax filings, as requested by Plaintiff; (iii) WSFB's bank statements from 2023 to present, and any other statements that demonstrate transaction histories for all of WSFB's business operations, including unrecorded, off-book transactions; (iv) financial statements for the WSFB's food distribution service from 2023 to present; (v) complete POS system access for WSFB and its affiliated entities; (vi) WSFB's subcontractor and payroll records, lease agreements, and other documents reflecting revenues, expenses, and capital structure dated 2023 to present; and

- Grant any other such relief that it sees fit.

## JURY DEMAND

Per Fed. R. Civ. P. 38, Plaintiff Xinyi Liu demands a jury on all issues so triable.

Respectfully submitted,

_____/s/ Jan I. Berlage_____

Jan I. Berlage (23937)
GOHN HANKEY & BERLAGE LLP
201 N. Charles Street, Suite 2101
Baltimore, Maryland 21201
(410) 752-1261
(410) 752-2519 (fax)
jberlage@ghsllp.com

*Counsel for Plaintiff*